# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 3:22-cr-00174 |
| | ) | |
| FREDERICK EUGENE CARNEY | ) | JUDGE CAMPBELL |

## MEMORANDUM AND ORDER

### I. INTRODUCTION

Pending before the Court is Defendant Frederick Eugene Carney's ("Defendant") Motion to Suppress Evidence seeking to suppress evidence obtained from the May 2, 2022 seizure and subsequent search of a 2014 black Dodge Charger. (Doc. No. 114). The Government filed a response in opposition. (Doc. No. 131). The Court held a hearing on April 25, 2023.

For the reasons stated herein, the Motion to Suppress is **DENIED**.

### II. FACTS[1]

Carney challenges the seizure of a 2014 black Dodge Charger from the carport area of the residence of Lakita Poole on May 2, 2022. On the date of the challenged seizure, Carney was suspected of having perpetrated a series of bank robberies in the middle Tennessee area. Just four days prior, this Court issued a warrant for his arrest in connection with a robbery on April 20, 2022. (Doc. Nos. 3, 4). On May 2, 2022, a First Horizon Bank in Whites Creek, Tennessee, was robbed by two men brandishing handguns. Investigators suspected one of the men was Carney.

The investigation of prior robberies revealed that Carney was affiliated with a residence at

---

[1] The facts are drawn from testimony, video footage, and other evidence presented at the hearing on April 25, 2023, as well as the exhibits attached to the motion. (*See* Doc. No. 115-1 through 115-6; Gov't Exs. 1-12).

721 Flint Ridge Drive, Whites Creek, Tennessee. FBI agents went to the address looking for Carney. Based on their prior investigation, they knew what Carney looked like and that he drove a black Dodge Charger, which matched the description of a vehicle driven by the perpetrator of a bank robbery on April 20, 2022. The house at 721 Flint Ridge Drive is located on a corner. On one side, a driveway extends from the road to the rear of the house, terminating at an open-sided metal carport. The back yard is partially enclosed by a chain link fence; the fence terminates at the driveway, leaving visibility and access to the backyard unobstructed at this point.

Driving past the address, agents saw a black Dodge Charger parked under the carport and a red sedan in the driveway behind the Charger. Both vehicles were clearly visible from the street. The agents surveilled the house for about 30 minutes from an unmarked car. They saw Carney walk down the street toward the house, speak briefly with a woman later identified as Latika Poole, and enter the house through the back door. After about one minute, Carney exited the house through the back door with a bag in his hand. He approached the Dodge Charger until he was approximately arm's length away. The agents lost sight of Carney briefly and then saw him running on an adjacent street. Believing Carney was armed and dangerous, they called for backup and followed Carney in their vehicle. When Carney saw them, he ran into the woods. When backup arrived, the agents pursued Carney on foot, but were unable to apprehend him.

Around this time, Carney texted his "friend" Kelsey Stringfield to pick him up at "Will's Crib," which appears to refer to the house at 721 Flint Ridge Drive.[2] Stringfield stated that Carney had a gray backpack when he got in her car that day. She said he usually kept clothes and personal

---

[2] FBI Agent Christina Alamo testified that the investigation showed Carney's co-defendant, William Ewing, was affiliated with that address, and Springfield told investigators that she picked up Carney near 721 Flint Ridge Drive. Latika Poole told investigators that William Ewing was her roommate's boyfriend. (Gov't Ex. 12). Kelsey Stringfield told investigators that her relationship with Carney was "based mainly on sex." (Gov't Ex. 11).

items in the backpack; he never left items at her house. During the drive to Stringfield's house, she and Carney got into an argument, and he exited the vehicle with the backpack. Helicopter surveillance saw Carney flee the vehicle and throw a backpack into a fenced back yard. The backpack was retrieved and found to contain Carney's personal items, including a health insurance card, mail addressed to Carney at an address in Murfreesboro, Tennessee, car keys (not to the Dodge Charger), a toothbrush, toothpaste, bodywash, shaving razors, and a money clip.

When Carney fled into the woods, the agents who had been chasing him returned to the Flint Ridge Drive address. By this time a number of Metro Nashville police officers and FBI agents were on the scene. Officers briefly looked for fugitives in the Dodge Charger and the red sedan. Finding none, they proceeded to talk to the residents of the home – Latika Poole and her roommate, Shermaine Poole.

Latika Poole initially said that both of the vehicles belonged to her, but later stated the Charger belonged to Carney. She advised that Carney was a friend who sometimes sleeps at the house and William Ewing was her roommate's boyfriend. Latika Poole indicated no one was inside the house and consented, orally and in writing, to a search of the house. (*See* Gov't Ex. 9 (written consent for a "complete search" of 721 Flint Ridge Drive signed by Latika Poole and Shermaine Poole)). Latika Poole's conversations with the investigators took place in the front yard and in the back yard near the carport.

Police towed the Dodge Charger (and the red sedan) to the vehicle impound lot and, two days later, obtained a warrant to search the Charger and seize evidence of the bank robberies. (*See* Warrant and Warrant Affidavit, Doc. No. 115-3). The vehicle search produced an extended 9mm magazine and various items of clothing, including footwear, a black jacket, black gloves, a black ski mask, and other items. (Evidence Log, Doc. No. 115-6).

Carney contends the Dodge Charger was located within the curtilage of the home at 721 Flint Ridge Drive where he was an overnight guest. On that basis, he challenges the seizure of the Dodge Charger as violative of the Fourth Amendment. Carney does not challenge the sufficiency of the search warrant.

The Government argues that Carney does not have standing to challenge the seizure of the Dodge Charger, and disputes his contention that the vehicle was within the curtilage of the home. The Government further argues that for various reasons, including the Pooles' consent to search the property, law enforcement had lawful right of access to the Dodge Charger and seizure of the vehicle was justified under the plain view exception and the automobile exception to the warrant requirement.

### III. ANALYSIS

The Fourth Amendment prohibits unreasonable search and seizure. U.S. Const. Amend. IV. "The touchstone of the Fourth Amendment is reasonableness …" *United States v. Sharp*, 40 F.4th 749, 752 (6th Cir. 2022) (citing *United States v. Knights*, 534 U.S. 112, 117 (2001)). "At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Collins v. Virginia*, 138 S.Ct. 1663, 1670 (2018) (quoting *Florida v. Jardines*, 569 U.S. 1, 6 (2013)). "To give full practical effect to that right, the Court considers – 'the area immediately surrounding and associated with the home' – to be part of the home itself for Fourth Amendment purposes." *Id*.

A person has standing to challenge the reasonableness of a search and seizure only if the search and seizure violated his or her personal Fourth Amendment right to a legitimate expectation of privacy. *United States v. Padilla*, 508 U.S. 77 (1993). A person unquestionably has a legitimate expectation of privacy in his or her own home. The expectation of privacy extends to overnight

guests and sometimes to social guests when they have a meaningful connection to the residence. *Minnesota v. Olson*, 495 U.S. 91 (1990); *United States v. Haynes*, 108 F. App'x 372, 374 (6th Cir. 2004); *United States v. Pollard*, 215 F.3d 643, 647-48 (6th Cir. 2000).

Ordinarily, the Court would first consider whether Carney has standing to challenge the seizure from a place where he "sometimes sleeps" but is not his residence. However, because the Count finds the search was lawful, it need not address the issue of standing. For the same reason, the Court does not decide whether the vehicle was seized from an area within the curtilage of the home. Even if this question were to be decided in Carney's favor, for the reasons discussed below, the seizure of the Dodge Charger did not violate Carney's Fourth Amendment rights.

Generally, warrantless search or warrantless seizure is deemed unreasonable under the Fourth Amendment. *See United States v. Roark*, 36 F.3d 14, 17 (6th Cir. 1994) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967); *Hockenberry*, 730 F.3d 645, 658 (6th Cir. 2013) (citing *Arizona v. Gant*, 556 U.S. 332, 338 (2009)). However, there are exceptions. Two of these exceptions – plain view and the automobile exception– apply here.

Under the plain view doctrine, law enforcement officers may seize evidence without a warrant when the following factors are satisfied: "(1) the object must be in plain view; (2) the officer must be legally present in the place from which the object can plainly be seen; (3) the object's incriminating nature must be immediately apparent; (4) the officer must have a right of access to the object." *Horton v. California*, 496 U.S. 128, 136-37 (1990); *see also*, United States v. Loines, 56 F.4th 1099, 1106 (6th Cir. 2023).

Under the automobile exception, if there is probable cause to believe the vehicle contains contraband or evidence of criminal activity, law enforcement may conduct a warrantless search or may seize the vehicle without a warrant and hold it for "whatever period is necessary to obtain a

warrant for the search." *United States v. Shelton*, 817 F. App'x 629, 634 (10th Cir. 2020) (citing *Chambers v. Maroney*, 399 U.S. 42, 51-52 (1970)); *United States v. Galvez*, 645 F.3d 347, 355 (6th Cir. 2011). "Either course is reasonable under the Fourth Amendment" and "for constitutional purposes, [there is] no difference" between the two. *Chambers*, 399 U.S. at 52.

Although the vehicle was parked at the rear of the house, it was readily visible from the public street where law enforcement first observed it and identified the vehicle as matching the description of a vehicle driven by the perpetrator of a bank robbery on April 20, 2022. Law enforcement later obtained consent from Latika and Shermaine Poole, the occupants of the house, to search the premises. In addition to the signed consent form, the evidence presented during the hearing showed Latika Poole speaking with law enforcement in the front yard and back yard, including immediately adjacent to the vehicle at issue. *See United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (consent may be provided through "words, gesture, or conduct"). Defendant's argument that the consent to search only pertained to the interior of the house and not to the surrounding yard is not persuasive. The first three factors are, therefore, easily met.

As to the fourth element, law enforcement had a "right of access" to seize the vehicle under the automobile exception. There is no dispute that law enforcement had probable cause to believe the vehicle had been used in and contained evidence of criminal activity. Under these circumstances, particularly given the ready mobility of the vehicle, the warrantless seizure was lawful. This is the case even though there is no evidence that Ms. Poole consented to the seizure of the vehicle.

As a point of comparison, the relatively recent Supreme Court case, *Collins v. Virginia*, 138 S. Ct. 1663, 1671 (2018), considered the intersection of the automobile exception and the protection extended to the curtilage of the home. In *Collins*, the Supreme Court held that the

automobile exception does not permit a police officer, "uninvited and without a warrant, to enter the curtilage of a home in order to search a vehicle parked therein" because the automobile exception does not permit warrantless intrusion on a home or its curtilage. Here, even if the vehicle was parked within the curtilage, which the Court has not decided, unlike officers in *Collins*, the investigating officers in this case did not enter the area unlawfully. Because there was probable cause to believe the vehicle contained evidence of criminal activity, law enforcement could conduct a warrantless search of the vehicle. *Galvez*, 645 F.3d at 355. Therefore, the decision to seize the vehicle rather than conduct a search on the spot was also constitutionally reasonable. *See Chambers*, 399 U.S. at 52.

## IV. CONCLUSION

For the reasons discussed herein, law enforcement's seizure of the Dodge Charger from 721 Flint Ridge Drive on May 2, 2022, did not violate Carney's Fourth Amendment rights. Defendant Carney's Motion to Suppress (Doc. No. 114) is **DENIED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE