IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | NO. 3:22-cr-00174 |
| v. ) | |
| ) | JUDGE CAMPBELL |
| FREDRICK EUGENE CARNEY ) | |
| WILLIAM JOHN EWING III ) | |

**MEMORANDUM AND ORDER**

On January 9, 2023, a federal grand jury returned a Second Superseding Indictment against Defendants Frederick Eugene Carney and William John Ewing III. (Doc. No. 78). Carney and Ewing are charged with Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count One) for the robbery of a Cash Express in Murfreesboro, Tennessee, on February 18, 2022; and with armed bank robbery in violation of 18 U.S.C. § 2113 (Counts Two and Six), and use, carry, and brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c) (Counts Three and Seven) related to the robbery of a Region Bank in Smyrna, Tennessee, on April 4, 2022, and a First Horizon Bank in Whites Creek, Tennessee, on May 2, 2022. Carney is also charged with Hobbs Act robbery in violation of 18 U.S.C. § 1951, and use, carry, and brandishing a firearm in relation to a crime of violence in violation 18 U.S.C. § 924(c) (Counts Four and Five) related to the robbery of a Cash Express in Greenbrier, Tennessee, on April 20, 2022.

In anticipation of a May 2, 2023 trial date, and in accordance with this Court's January 11, 2023 Order, the Defendants filed a number of motions to which the Government has responded. This Memorandum and Order addresses the following motions: Ewing's Objection to Misjoinder and Motion to Sever (Doc. No. 102), Ewing's Motion in Limine to Exclude

Hearsay Statements Attributed to Frederick Carney (Doc. No. 103), Ewing's Motion to Exclude Evidence of Other Crimes or Acts (Doc. No. 100), Carney's Motion to Exclude 404(b) Evidence (Doc. No. 113), Ewing's Motion in Limine Regarding Gang References (Doc. No. 117), Ewing's Motion in Limine to Prevent Any Witness Stating Opinion on Identity of Person in Surveillance Photo (Doc. No. 104), Ewing's Motion to Disclose Transcripts from Grand Jury (Doc. No. 101), and motions by Ewing and Carney for additional peremptory challenges (Doc. Nos. 111, 112). Also pending before the Court is Carney's Motion to Suppress Evidence (Doc. No. 114), which will be decided by separate order.

## I. OBJECTION TO MISJOINDER AND MOTION TO SEVER

Ewing moves to sever defendants and/or counts (Doc. No. 102) or, in the alternative, to exclude hearsay statements attributed to Fredrick Carney (Doc. No. 103). The Government responded in opposition to both motions. (Doc. Nos. 124, 125).

Ewing seeks to sever his trial from the trial of Carney and to sever the trial of the Counts charged against him (Counts One, Two, Three, Six, and Seven). He argues that the trial of charges against him must be severed from the trial of charges against Carney because he will suffer prejudice from a joint trial due to the spill-over effect of evidence against Carney that would not be admissible in a trial against only Ewing.[1] Ewing specifically points to prejudice

---

[1] Ewing also argues that "a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." (Doc. No. 102 (citing *Tifford v. Wainwright*, 588 F.2d 954 (5th Cir. 1979)). Ewing does not identify any exculpatory evidence that would not be admissible in a joint trial. The Court finds the mere potential for inadmissible exculpatory evidence is not grounds for severance.

2

from the jury hearing evidence of "other crimes" of Carney, including those charges in Counts Four and Five, and anticipated testimony that Carney admitted to committing the robberies charged in the Second Superseding Indictment and others, which, absent severance, presents issues under the Confrontation Clause.

Ewing also argues that the Second Superseding Indictment improperly joins charges arising out of four separate robberies because the robberies are separated by time and location. He argues the remedy to this misjoinder is for the Court to hold three separate trials on the charges arising out of each of the robberies for which he is accused. He proposes the Court hold one trial for Count One, another trial for Counts Two and Three, and a third trial for Counts Six and Seven. The Court observes that granting Ewing's motion would necessarily entail at least one more trial on the charges against Carney, resulting in a minimum of four separate trials on the charges in the Second Superseding Indictment. In the alternative, Ewing proposes severing the counts in which only Carney is charged (Counts Four and Five).

**A. Joinder**

Federal Rules of Criminal Procedure 8 provides:

> **(a) Joinder of Offenses.** The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged – whether felonies or misdemeanors or both – are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.
>
> **(b) Joinder of Defendants.** The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

Ewing is properly joined under Rule 8. The Second Superseding Indictment charges Ewing and Carney with federal offenses in connection with a series of armed robberies in the Middle District of Tennessee during a three-month period in 2022. Ewing and Carney are alleged to have perpetrated three of the four robberies together. (Counts One, Two, Three, Four, Six, and Seven). Carney alone is charged related to the robbery on April 20, 2022. Ewing's argument that the offenses and defendants were not properly joined because the robberies took place on different dates and at different locations is without merit. Rule 8 plainly allows for joinder of offenses that are of the same or similar character and for joinder of defendants who are alleged to have participated in the same act or transaction. The charges in this case unquestionably meet this requirement.

**B. Severance**

Finding no misjoinder, the Court turns to Ewing motion for severance, which is governed by Federal Rule of Criminal Procedure 14:

> **(a) Relief.** If the joinder of offenses or defendants in an indictment … appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief justice requires.
>
> **(b) Defendant's Statements.** Before ruling on a defendant's motion to sever, the court may order an attorney for the government to deliver to the court for in camera inspection any defendant's statement that the government intends to use as evidence.

The Supreme Court has explained that there is a preference for joint trials for defendants who are jointly charged in the same proceeding. *See Zafiro v. United States*, 506 U.S. 534, 537

(1993); *see also United States v. Cordero*, 973 F.3d 603, 624 (6th Cir. 2020) ("Joint trials are favored[.]") (citation omitted); *United States v. Tisdale*, 980 F.3d 1089, 1094 (6th Cir. 2020) ("It's not just more efficient to have one trial and one set of evidentiary admissions for all defendants at once, but a joint trial also decreases the risk of inconsistent verdicts.") (citations omitted). As such, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. "The risk of prejudice will vary with the facts of each case," and "less drastic measures, such as limiting instructions, will often suffice to cure any risk of prejudice." *Id*. Motions for severance under Rule 14 fall under the "sound discretion of the district court." *Id*. at 541.

Ewing argues that severance is appropriate because: (1) anticipated testimony regarding Carney's purported admissions will violate his rights under the Confrontation Clause; and (2) jurors will be unable to separate the evidence introduced against Carney resulting in a "spill-over" effect. The Court considers each in turn.

1. *Bruton* and the Confrontation Clause

The Government intends to offer testimony from a third-party witness that Carney told the witness that he (Carney) perpetrated robberies and that he committed some of the robberies with "another person." (*See* Doc. No. 124). Ewing argues that, if Carney does not testify at trial, testimony regarding Carney's purported confessions violates the Confrontation Clause as stated in *Bruton v. United States*, 391 U.S. 123 (1968). Ewing insists that the only way to remedy the *Bruton* issue is to: (1) sever the defendants for trial; or (2) exclude testimony of the hearsay

5

statements by Carney which purport to inculpate Ewing. He filed a separate motion to exclude testimony of Carney's confession on the same ground. (Motion in Limine, Doc. No. 103).

The Confrontation Clause of the Sixth Amendment guarantees the right of a criminal defendant "to be confronted with the witnesses against him." U.S. Const., Amend. VI. "Ordinarily, a witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against a codefendant." *Richardson v. Marsh*, 481 U.S. 200, 206 (1987). This is because the jury is presumed to follow the instructions given to them. *Id*. The Supreme Court found an exception to the general rule and held that a non-testifying defendant's statement cannot be admitted at a joint trial if it facially incriminates the codefendant. *Bruton v. United States*, 391 U.S. 123, 135-36 (1968). However, with a proper limiting instruction, *Bruton* does not preclude the admission of a confession that has been redacted to eliminate not only the defendant's name, but any reference to his existence, that becomes incriminating only when linked with other evidence at trial. *Richardson*, 481 U.S. at 211. In *Richardson*, the Court expressed "no opinion on the admissibility of a confession in which the defendant's name has been replaced with a symbol or neutral pronoun." *Id*. at 211 n. 5.

In *Gray v. Maryland*, 523 U.S. 185 (1998), the Supreme Court considered whether a redacted confession that replaces the name of a codefendant with an obvious blank space or word such as "deleted," raises the Confrontation Clause issues identified in *Bruton*. The Court found that it does, observing that although the jury would have to make inferences to connect the blank space to a codefendant, statements that have been redacted to leave a blank space or

6

Case 3:22-cr-00174   Document 140   Filed 05/10/23   Page 6 of 15 PageID #: 557

"deleted" "obviously refer directly to someone, often obviously the defendant, and [] involve inferences that a jury ordinary could make immediately, even were the confession the first item introduced at trial." *Id*. at 196. The Court noted that unlike the redacted statement in *Richardson*, which bore no indication that it had been redacted and did not implicate anyone else in the crime, the redactions in *Gray* were obvious, which had the effect of drawing the jury's attention to the redaction, and referred directly to the existence of other perpetrators. *Id*. at 197. Focusing on the "appearance of redaction," the Court suggested that redacting the statement without showing any indication that specific names had been removed would have been preferable. *Id*. at 196. For example, in *Gray*, the witness told the jury that the confession said: "Me, deleted, deleted, and a few other guys [beat up the victim]." *Id*. The Court suggested that the jury could have instead been told the confession was: "Me and a few other guys [beat up the victim]." *Id*. The holding, however, was limited to finding that the confession at issue, "which substituted blanks and the word 'delete' for the [defendant's] proper name, falls within the class of statement to which *Bruton's* protections apply." *Id*. at 197.

Following *Gray*, the Sixth Circuit has held that the government may avoid a *Bruton* violation by replacing a defendant's name with a neutral term, such as "another person" or "another individual." *United States v. Vasilakos*, 508 F.3d 401, 408 (6th Cir. 2007); *see also*, *United States v. Sherrill*, 972 F.3d 752, 763-64 (6th Cir. 2020); *United States v. Al-Din*, 631 F. App'x 313, 321 (6th Cir. 2015).

Although the *Vlasiakos* Court appears to have adopted a general rule about the use of neutral terms, it bears noting that in *Vasilakos*, the government was prosecuting multiple

defendants for a multifaceted fraud conspiracy. *Vasilakos*, 508 F.3d at 408. The Court found that because there were several individuals involved in the alleged conspiracy, substituting the declarant codefendant's direct references to his two codefendants with a neutral term, such as "another person," did not "ineluctably implicate" the codefendants, and consequently did not violate the Confrontation Clause. *Id*.

More recent cases affirming the use of neutral terms have also involved more than two codefendants. *See Sherrill*, 972 F.3d at 763-64 (involving charges of Hobbs Act robbery, against five defendants, three of whom proceeded to trial); *Al-Din*, 631 F. App'x at 321 (involving a "multifacted conspiracy" involving at least seven individuals). In finding that the redactions and alterations avoided a *Bruton* violation, the *Al-Din* Court observed that "[n]othing in the altered statements drew any more attention to [the two codefendants] than to the other coconspirators." *Al-Din*, 631 F. App'x at 322. The *Sherrill* Court also considered the effect of the use of neutral nouns, noting that the "neutral pronouns could have referred to any of the individuals allegedly involved in the robbery, and therefore did not necessarily implicate [the codefendants]." *Id*. at 764.

Here, the Government proposes following *Vasilakos* and substituting a neutral noun for Ewing's name so that the witness will testify that he or she heard directly from Carney that Carney perpetrated robberies, and that Carney committed some of the robberies with "another person." (Doc. No. 124). Ewing argues that Carney's purported admission, even with the neutral term "another person" in place of his name, implicates him in the robberies because jurors will immediately presume that he (Ewing), as the only codefendant, must be the "other person." He

also argues that Carney's admission, in conjunction with other evidence showing that Carney and Ewing are close friends and family, may lead jurors to conclude that Ewing was involved in the robberies merely because he is a close friend or family member of Carney.

Ewing's *Bruton* arguments have merit, but they do not warrant severance or exclusion, because the Confrontation Clause issue can be resolved by limiting the testimony regarding Carney's admission and including a limiting instruction. The Court finds that limiting the witness's testimony of Carney's admission to reference only Carney's role in the charged offenses will best address the *Bruton* issue in line with the testimony considered by the Court in *Richardson* in which not only the defendant's name, but any reference to his existence was eliminated. Here, the elimination of reference to Ewing is even easier because the testimony concerns an oral admission. Therefore, the witness can easily be instructed to testify only as to Carney's statement about his own role in the robberies. The prosecution has little to gain from adding that Carney admitted to committing some of the robberies with "another person," especially where other evidence at trial will show that some of the robberies were unquestionably committed by two people.

    2. <u>Spill-Over Effect</u>

"A spillover of evidence between counts does not require severance unless there is 'substantial,' 'undue,' or 'compelling' prejudice." *Thomas v. United States*, 849 F.3d 669, 676 (6th Cir. 2017) (citing *United States v. Fields*, 763 F.3d 443, 457 (6th Cir. 2014), and *United States v. Warner*, 671 F.2d 1189, 1196 (6th Cir. 1992)).

Ewing argues that severance is necessary due to the risk that the jury will confuse

9

evidence of the counts charged only as to Carney and convict him based on his friendship or family relationship with Carney. These concerns do not warrant severance. This case is not overly complicated. It involves only two defendants charged with crimes related to four robberies. The counts charged only against Carney occurred on a separate date than the counts charged against Ewing and Carney together, which mitigates the risk of jury confusion. The Court believes the jury will be able to "adequately 'compartmentalize and distinguish the evidence concerning the different offenses charged.'" *See id*. (citing *United States v. Cody*, 498 F.3d 582, 587 (6th Cir. 2007)). Moreover, the jury will be instructed to separately consider evidence as to each charge and each defendant.

For these reasons Ewing's Motion to Sever Defendants / Motion to Sever Counts (Doc. No. 102) is **DENIED**.

## II. STATEMENTS ATTRIBUTED TO FREDERICK CARNEY

As discussed above, Ewing seeks to exclude or limit testimony of a purported admission by Carney. (*See supra* I.B.1.; Ewing Motion in Limine, Doc. No. 103). The motion is based on argument that such testimony violates the Sixth Amendment Confrontation Clause. For the reasons discussed above, the Motion (Doc. No. 103) is **GRANTED IN PART and DENIED IN PART**. To the extent the motion seeks to exclude testimony of Carney's admission altogether, it is denied. However, testimony of Carney's will be limited to only Carney's purported admission of his own role in the robbery without reference to Ewing directly and without reference to "another person."

## III. EVIDENCE OF OTHER CRIMES OR ACTS

Ewing and Carney filed separate motions seeking to exclude evidence of other crimes or acts. (Doc. Nos. 100, 113). Ewing's motion focuses on evidence of five robberies other than those charged in the Second Superseding Indictment: (1) a Charlotte Pike Nashville Cash Express on March 10, 2022; (2) a Goodlettsville Subway Shop on March 11, 2022; (3) a Bowling Green Cash Express on March 21, 2022; (4) a Moulton, Alabama Cash Express on March 24, 2022; and (5) an Ardmore, Tennessee Cash Express on March 24, 2022. (*See* Doc. No. 100). Carney's motion to exclude 404(b) evidence argues that the Government has not notified him of its intent to introduce any "other act" evidence and asks the Court to prevent the Government from introducing unspecified 404(b) evidence beyond the Court's deadline. (Doc. No. 113).

The Government responds that it does not intend to introduce evidence of the robberies on March 10, 11, 21, and 24 in its case-in-chief at trial. (Doc. No. 126, 127). Accordingly, the motions to exclude evidence of other acts that are these robberies (Doc. Nos. 100, 113) are **MOOT**. To the extent defendants seek to exclude 404(b) evidence unrelated to uncharged robberies, they may raise contemporaneous objections at trial.

## IV. GANG REFERENCES

Ewing requests the Court hold a hearing outside the presence of the jury prior to the introduction of testimony regarding gang-related activity or gang affiliation or membership. (Doc. No. 117). The Government responds that it does not intent to introduce gang references in its case-in-chief. (Doc. No. 123).

11

In light of the Government's representation that it will not introduce gang references in its case in chief, the motion is largely moot. However, given the limited relief requested, the Motion (Doc. No. 117) is **GRANTED**. Prior to the introduction of testimony regarding gang activity or gang affiliation, the Government shall request a bench conference to discuss the anticipated testimony.

### V.　　LAY WITNESS OPINION IDENTIFICATION TESTIMONY

Ewing states that he expects the Government to solicit opinion testimony from "persons familiar with Mr. Ewing" who were not present at the robbery on "whether photographs taken on the surveillance camera 'looked like' Mr. Ewing." (Doc. No. 104 at 3). He contends that whether a person depicted in a photograph looks like Ewing or Carney is a matter reserved to the jury and seeks an order preventing the Government from asking any witness to identify William Ewing or John Carney in photos or video if that witness did not take the photograph or was not present at the time the photograph or video was made. (*Id.*). The Government responds that lay opinion testimony regarding the identity of persons in surveillance photo is permissible under Fed. R. Evid. 701 and should be allowed here. (Doc. No. 122).

"Lay opinion identification testimony is helpful to the determination of whether a suspect depicted in a photograph is the defendant where there is some basis for concluding that the witness is more likely to correctly identify the defendant from the photograph than the jury." *United States v. Dixon*, 413 F.3d 540, 545 (6th Cir. 2005). The Sixth Circuit has identified several factors that are relevant to the analysis of whether a witness will be more likely than the jury to identify a person correctly in a photograph: "(1) The witness's general level of

12

familiarity with the defendant's appearance; (2) the witness's familiarity with the defendant's appearance at the time the surveillance photograph was taken or when the defendant was dressed in a manner similar to the individual depicted in the photograph; (3) whether the defendant had disguised his appearance at the time of the offense; and (4) whether the defendant altered his appearance prior to trial." *Id*. Other relevant considerations include "the degree and clarity of the surveillance photograph and the quality and completeness with which the individual is depicted in the photograph."

Ewing's motion to prevent *all* lay witness opinion identification testimony unless the witness was present at the time the photo was taken is not supported by the case law which allows such testimony if the witness is more likely than the jury to identify a person correctly in a photograph. Though the witness's presence or non-presence when the photograph was taken is relevant to the overall consideration, it is not dispositive. Accordingly, Ewing's motion in limine to prevent any witness from stating an opinion on the identity of person(s) in surveillance photos (Doc. No. 122) is **DENIED** subject to contemporaneous objections at trial.

## VI. GRAND JURY TRANSCRIPTS

Ewing seeks disclosure and copies of the Grand Jury testimony of all witnesses related to this case and defendants "to allow for proper and effective preparation by counsel for the defense." (Doc. No. 101) Ewing states that his attorney was permitted to read the transcript of testimony of one grand jury witness who is expected to testify at trial, but was not permitted to make a copy of the transcript. Ewing contends that because his attorney has viewed some of the Grand Jury testimony, there is no harm in providing the transcripts for all witnesses. The

13

Government objects to disclosure on grounds that Ewing fails to articulate a "particularized need" for any grand jury testimony.

Federal Rule of Criminal Procedure 6(e)(2)(vi) precludes an attorney for the Government from disclosing any matter occurring before the grand jury, except under limited circumstances generally not applicable here. The exception Ewing seeks to invoke is one that allows disclosure of grand jury matters if authorized by the Court. "The court may authorize disclosure—at a time, in a manner, and subject to any other conditions that it directs—of a grand-jury matter … preliminarily or in connection with a judicial proceeding." Fed. R. Crim. P. 6(e)(3)(E)(i).  Recognizing a strong policy in favor of maintaining the secrecy of grand jury proceeding, the Sixth Circuit has held that disclosure of such proceedings "is proper only on a showing of 'compelling necessity' and 'particularized need.'" *United States v. Azad*, 809 F.2d 291, 294-95 (6th Cir. 1986). The need for effective trial preparation does not satisfy the requirement to show a "particularized need." *See United States v. Wise*, 2022 WL 17869821, at * 2 (E.D. Tenn. Dec. 22, 2022); *United States v. Ferguson*, 844 F. Supp. 2d 810, 829 (E.D. Mich. 2012) (observing that it is it "difficult to imagine what need could be more general than a need to prepare for trial").

The Court finds that Ewing has not met his burden for pretrial disclosure of grand jury testimony.  Accordingly, the Motion to Disclose Transcripts from Grand Jury (Doc. No. 101) is **DENIED**.

## VII. ADDITIONAL PEREMPTORY CHALLENGES

Ewing and Carney request the Court allow additional peremptory challenges and permit each defendant to exercise ten challenges, for a total of 20 challenges for the defense. (Doc. Nos. 111, 112). Defendants argue that limiting them to a total of ten peremptory challenges hinders each defendant's ability to engage in meaningful *voir dire* and undermines the intent of the rule. (*Id*.). In response, the Government argues doubling the number of peremptory challenges is unnecessary and contrary to judicial economy but does not oppose allowing the defendants additional peremptory challenges if the Court also awards additional challenges to the government to maintain the same ratio set forth in Fed. R. Crim. P. 24(b). (Doc. No. 118).

The Court does not find that limiting Defendants' to ten peremptory strikes will hinder the ability to engage in meaningful *voir dire*. An attorney for each Defendant and the Government will have an opportunity to question the entire panel. Allowing the standard number of peremptory challenges will not adversely affect the *voir dire*. The motion for additional peremptory challenges is **DENIED**.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE